Manganese Iron Ore Co. v. Trotter.

THE MANGANESE IRON ORE COMPANY

*v.*

CHARLES W. TROTTER.

While in mere matters of management or regulation the court may exercise a wide discretion, still, where the rights to be controlled grow out of a contract, the administration or regulation must conform to the contract, for the court is as much bound by the contract as the parties themselves.

On petition by defendant for change in the plan of management of a tunnel.

*Mr. R. W. Parker* and *Mr. C. Parker*, for defendant.

*Mr. R. Gilchrist* and *Mr. B. Williamson*, for complainants.

THE VICE-CHANCELLOR.

The rights of the parties to this controversy, under their several contracts, have already been defined by this court. *Silsby* v. *Trotter*, 2 *Stew.* 228. The present complainants claim to have succeeded to the rights of the complainant in the original cause. For present purposes that claim may be assumed to be true without prejudice to the defendant. The rights of the parties, as already determined by the judgment of the court in the original cause, are: First, that both parties are entitled to the use of the tunnel, but the right of the complainant is subordinate to that of the defendant; second, that until the complainant is able to furnish the defendant with the zinc ores he is entitled to under the contract of April 28th, 1874, and until he gives him notice of his election to do so, the defendant has an exclusive right to the use of the tunnel so long as his operations in the mine render the exclusive use of the tunnel necessary to him; third, that when the complainant is able, and has notified the defendant of his election to mine and furnish to him the zinc ores he is entitled to under the contract of April 28th, 1874, he will be entitled to the exclusive use of the tunnel for the purpose of furnishing those ores, and for that purpose only, for such time, in each year, as shall be necessary to afford him a fair opportunity to furnish to the defendant the quantity of ore deliverable to him in that year; fourth, that at all times when the defendant's mining operations do not render the exclusive use of the tunnel necessary to him, the complainant shall be permitted to use it to such extent as will not interfere with the defendant's use of it; fifth, that whenever the defendant shall suspend work temporarily, or his mining operations do not render the use of the tunnel necessary to him, the complainant shall, for such period as the defendant does not need its use, have the entire use of the tunnel.

An order declaring the rights of the parties in conformity to the foregoing determination, was made January 15th, 1878, and immediately thereafter the present complainants,

and also the complainant in the original cause, gave notice of their election to mine and furnish the zinc ores the defendant is entitled to under the contract of April 28th, 1874. On the 23d of February, 1878, a manager was appointed, with direction to permit the Manganese Iron Ore Company to have the exclusive use and possession of the tunnel and other mining tools, for the purpose of mining and making delivery to the defendant of the zinc ores he was then entitled to, such use and possession to continue only for such period of time as, in the judgment of the manager, was reasonably necessary for the purposes stated.

The manager took possession March 14th, 1878. Since then the complainants have mined and removed over four thousand tons of franklinite, and about one hundred and fifty tons of zinc. A small additional quantity of zinc, estimated by the manager at less than sixty tons, is now accessible, and can be removed in a few days. After that is removed, before any other zinc can be safely mined in this mine, it will be necessary, in the judgment of the manager, to remove a quantity of franklinite nearly equal to that already removed. The defendant asks that the further removal of franklinite by the complainants be arrested, and that he be let in at once to the mine and remove the quantity he is authorized to take. His contract of September 14th, 1876, grants him the right to mine and take "from either side of the tunnel constructed by him," forty thousand tons of franklinite. There can be no doubt that the franklinite now being removed is the very ore covered by his contract, and which he and his licensers had in mind when the contract was made. His license is not a roving privilege, giving him a right to take the ore wherever he can find it, nor does it confer upon his licensers a paramount right to that found on either side of the tunnel, nor power to compel him to explore elsewhere on the territory covered by his license for his forty thousand tons. The affidavits before the court on this application render it quite certain that the quantity of franklinite remaining on either

side of the tunnel, as at present constructed, is less than the defendant is entitled to. When the manager was appointed, the court believed the mine or excavation then opened contained many hundred thousand tons of franklinite. The bill and affidavits were understood to represent that to be the fact. The affidavit of the person who had superintended all the mining operations of the complainant, stated that he had "stripped and exposed to view, in a space of one hundred and ten feet in length, above the tunnel, at least from sixty to seventy thousand tons of franklinite." It is now clearly demonstrated that the direction to the manager was based on an erroneous estimate of the quantity of franklinite then accessible from the tunnel, and that if the complainants are continued in the exclusive possession of the tunnel, and permitted to mine and remove the franklinite necessary to be removed to reach the zinc, so that it may be safely and properly mined, the defendant's right to take forty thousand tons of franklinite, at the point where it is first found, on either side of the tunnel, will be at least partially defeated. As already stated, the direction to the manager was given under the belief that the deposit of franklinite was very large, and it was also believed that the removal of so much of it as was necessary to render the zinc easily accessible, even if it reached fifteen or twenty thousand tons, would not in the slightest degree impair the defendant's right, for, even after removal of that quantity, it was supposed much more would still remain than he was authorized to take. Against this method of management no objection suggested itself to the court except the delay that would ensue to the defendant in working under his license, but as that could continue only for a short time, and as it did not appear that he had made a market for a single ton of franklinite, it did not seem possible that he could suffer very serious injury. But the facts now before the court very materially change the condition of affairs. Less than forty thousand tons of franklinite remain; by the judgment of the court the defendant has the superior right

Manganese Iron Ore Co. *v.* Trotter.

to the use of the tunnel, for the purpose of mining and removing that quantity of ore, on condition that he works the mine to the full extent of its capacity; the complainants were given the exclusive use of the tunnel for the purpose of mining zinc for the defendant, and for that purpose only, but, as a matter necessarily incidental to the accomplishment of that purpose, they have been permitted to mine and remove franklinite. A further exercise of this incidental right will materially diminish the quantity of ore the defendant has the paramount right to take by means of the tunnel. In view of these facts, it is plain a continuance of the present plan of management will deprive the defendant of the benefit of both his contract and the judgment of the court. That cannot be permitted. The court must protect and preserve, and neither withhold or destroy, nor permit to be withheld or destroyed.

The complainants offer to furnish the defendant with half the quantity of franklinite he is authorized by his contract to take, on being paid or credited with the cost of mining on what they owe the defendant for constructing the tunnel. An offer of the whole quantity, on the condition named, would seem to be manifestly fair; if that was the offer, and the court had power to make a new contract for the parties, I would be inclined to coerce the defendant's acceptance; but the right and liberty of making contracts belong alone to the parties. While it is true this is purely a matter of administration or regulation, and the court may therefore exercise a wide discretion, still, it must also be observed, it is an administration or regulation of rights secured by contract, and that the court is as much bound by the contracts as the parties themselves. A right to mine and furnish zinc was reserved, and may therefore be exercised; a right to mine and furnish franklinite was not reserved, and cannot, therefore, be exercised, even under the authority of the court, unless it has power to ingraft a new provision upon the contract against the will of one of the parties. No department or agency of government possesses any such power.

An order will be advised directing the manager to have the zinc now accessible mined and removed as soon as it can be done, and, immediately thereafter, permit the defendant, at all times when his mining operations render the exclusive use and possession of the tunnel and other mining tools belonging to him necessary to him, to have the exclusive use and possession thereof for the purpose of mining and removing franklinite, until a sufficient quantity of franklinite shall, in the judgment of the manager, have been removed to make it safe and proper to mine and remove zinc, when the complainants shall again, if they desire, be permitted to have the exclusive use of the tunnel, so far as may be necessary, for the purpose of mining and removing zinc for the defendant. The defendant's use and possession of the tunnel must be such only as were awarded to him by the order of January 15th, 1878, and the complainants will have a right to use it when the defendant does not require the use of it, or when their use of it will not interfere with the defendant's use of it.